# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:09CV299-RJC-DSC

| | |
|---|---|
| INTERNATIONAL BOTTLED WATER ASSOCIATION, <br><br> Plaintiff, <br><br> v. <br><br> ECO CANTEEN, INC., <br><br> Defendant. | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on the "Defendant Eco Canteen Inc.'s Motion to Dismiss or Alternatively to Stay and Remand to Arbitration" (document #18) and "Memorandum of Law in Support of Defendant Eco Canteen Inc.'s Motion to Dismiss or Alternatively to Stay and Remand to Arbitration" (document #19), both filed September 11, 2009; and "Plaintiff International Bottled Water Association's Opposition to Defendant Eco Canteen Inc.'s Motion to Dismiss or Alternatively to Stay and Remand to Arbitration" (document #24) filed September 29, 2009. On October 13, 2009, Defendant filed its "Reply to Plaintiff's Opposition to Defendant Eco Canteen's Motion to Dismiss or To Stay and Remand to Arbitration" (document #25).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the Motions are ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss be **DENIED**, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Defendant Eco Canteen, Inc. ("Eco Canteen") is in the business of selling reusable stainless steel water bottles. In December 2008, Eco Canteen began marketing its bottles through direct-response commercials appearing on television and the internet. In its advertisements, Eco Canteen highlighted specific concerns with polycarbonate water bottles, which contain Bisphenol-A ("BPA"), and with "single-use" plastic bottles made with polyethylene terephthalate ("PET"). Additionally, Eco Canteen's advertising underscored the cost and environmental impact of bottled water.

Plaintiff International Bottled Water Association ("IBWA"), is an association of bottled water producers, distributors and suppliers in the United States and around the world. In May 2009, Joseph Levitt, counsel for IBWA, contacted Eco Canteen to lodge its objections to the advertising campaign and requested that Eco Canteen immediately cease and desist from making such claims. On May 14, 2009, Eco Canteen's counsel, Gary Hailey, contacted Levitt, and informed him that Eco Canteen was editing a new television commercial and the new advertisement would be completed and disseminated to replace the current spot within 30 days.

In June 2009, not noticing any significant changes to Eco Canteen's commercials, IBWA filed a complaint with the National Advertising Division of the Council of Better Business Bureaus ("NAD") regarding the purportedly false and misleading nature of Eco Canteen's advertising claims. The NAD provides a private forum for resolving complaints regarding national advertisements. In addition to filing the complaint with the NAD, IBWA issued a press release regarding IBWA's NAD challenge. The NAD rules and procedures forbid a party from publicizing a challenge or attempting to use the outcome of a NAD challenge for competitive advantage. Consequently, on or around June 25, NAD advised the parties that the NAD proceeding would be closed unless the parties could reach

an agreement to continue with NAD's review of Eco Canteen's advertising materials. The negotiations between counsel for IBWA and Eco Canteen that followed are discussed in detail in Section II below.

On July 21, 2009, IBWA filed its Complaint (document #1) in this Court against Eco Canteen seeking preliminary and permanent injunctive relief and damages for unfair and deceptive trade practices and unfair competition under federal law, 15 U.S.C. § 1125, and state law, N.C. Gen. Stat. § 75-1.1. On August 20, 2009, IBWA sought a preliminary injunction from this Court, which is pending before the Honorable Robert J. Conrad, Jr. On September 12, 2009, Eco Canteen filed the subject "Motion to Dismiss," which has been fully briefed and is, therefore, ripe for disposition.

## II. DISCUSSION OF CLAIMS

The Federal Arbitration Act ("FAA") establishes a policy favoring the enforcement of written agreements to arbitrate. Specifically, the FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA requires courts to stay the proceeding and compel arbitration in the event of a refusal to comply with a valid agreement to arbitrate. 9 U.S.C. § 3. The court must compel arbitration even if the disputed claims are exempted from arbitration or otherwise considered nonarbitrable under state law. Perry v. Thomas, 482 U.S. 483, 489 (1987) (state statute that required litigants to be provided a judicial forum for resolving wage disputes "must give way" to Congress' intent to provide for enforcement of arbitration agreements); Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 90 (4th Cir. 2005) (FAA preempts state law barring arbitration of certain claims).

The Supreme Court has held that "questions of arbitrability must be addressed with a healthy

regard for the federal policy favoring arbitration." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). "Pursuant to that liberal policy, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability. " Moses H. Cone, 460 U.S. at 24-25; see also Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 710 (4th Cir. 2001); Long v. Silver, 248 F.3d 309, 315-16 (4th Cir. 2001); O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273-74 (4th Cir. 1997). The Fourth Circuit has stated that

> [T]he heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration. Thus, we may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

Long, 248 F.3d at 315-16 (internal citations omitted).

On the other hand, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). See also AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 648 (1986); Johnson v. Circuit City Stores, Inc., 148 F.3d 373, 377 (4th Cir. 1998); Arrants v. Buck, 130 F.3d 636, 640 (4th Cir. 1997).

Therefore, prior to determining the scope of the arbitration agreement, the court must determine that a valid agreement to arbitrate exists between the parties by applying "ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); see also Hill v. PeopleSoft USA, Inc., 412 F.3d 540, 543 (4th Cir. 2005). Under North Carolina law, a valid contract "requires offer, acceptance, consideration, and

4

no defenses to formation." Koltis v. North Carolina Dep't Human Resources, 125 N.C. App. 268, 271, 480 S.E.2d 702, 704 (1997). In order for a contract to arise, "the parties must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." Gregory v. Perdue, Inc., 47 N.C. App. 655, 657, 267 S.E.2d 584, 586 (1980). Phrased differently, "in order that there may be a valid and enforceable contract between parties, there must be a meeting of the minds of the contracting parties upon all essential terms and conditions of the contract." O'Grady v. First Union Nat'l Bank, 296 N.C. 212, 221, 250 S.E.2d 587, 594 (1978). "A party cannot seek to enforce one essential term when it has not agreed to other essential terms." Quantum Corporate Funding, Ltd. v. B.H. Bryan Building Company, Inc., 175 N.C. App. 483, 490, 623 S.E.2d 793, 799 (2006).

Eco Canteen argues that the agreement between IBWA and Eco Canteen to arbitrate their dispute before the NAD is comprised of a series of emails and communications containing an offer to allow NAD to review the advertising and determine the substantiation of the advertising claims and an acceptance of that offer. IBWA argues that there was no agreement between IBWA and Eco Canteen to submit to NAD review because Eco Canteen did not accept IBWA's time-limited offer to proceed with the NAD review until after IBWA's offer to continue with the NAD proceeding had expired.

The facts surrounding the communications between counsel for IBWA, Joseph Levitt, and counsel for Eco Canteen, Gary Hailey, are laid out in detail in their affidavits. Both parties were informed by NAD staff that because IBWA had issued a press release contrary to the NAD rules, the NAD proceeding would be closed unless the parties expressly consented to continuing with the

NAD's review of Eco Canteen's advertising materials. Although the parties dispute who initiated the telephone conversation, they agree that they had a conversation on or around June 25, 2009 to discuss the NAD challenge and whether Eco Canteen would consent to going forward with the NAD review of Eco Canteen's advertising materials. In Levitt's affidavit he states that during this telephone conversation he advised Hailey that "IBWA needed a clear answer one way or another, and requested Eco Canteen's response by the following Tuesday, June 30." Declaration of Joseph A. Levitt ("Levitt Decl.") at ¶ 8. This statement is supported by the e-mail Levitt sent to Hailey on Thursday, June 25, 2009 at 8:10 p.m. which states, "Gary–Sure here it is [copy of NAD letter]. I had a copy ready in case you asked. Per discussion, would appreciate feedback by Tuesday. Joe Levitt". Affidavit of Gary D. Hailey ("Hailey Aff.") at Ex. A; Levitt Decl. at Ex. 1. On June 30, Levitt sent an email to Hailey at 6:20 p.m. which states, "Gary–Per my voice message, following our detailed conversation, I conferred with my client, who feels at this stage we will need a formal adjudication, either at the NAD or elsewhere. Please confer with your client and advise me by tomorrow if your client is willing to consent to the NAD process. Thank you for your prompt attention. Joe". Hailey Aff. at Ex. B; Levitt Decl. at Ex. 2. On June 30 at 18:30:24, Hailey replied to Levitt's message stating, "Joe–I've passed this on to my clients–I'm running out now, but will speak with them tomorrow when I get in (after a morning doctor's appointment). Gary". Hailey Aff. at Ex. C; Levitt Decl. at Ex. 3. Levitt states in his affidavit that he left Hailey a voicemail on the afternoon of Wednesday, July 1, 2009 indicating that IBWA would presume that Eco Canteen did not consent to the NAD review if it did not accept by the end of the day. Levitt Decl. at Ex. 3. Hailey does not recall receiving this voicemail. Declaration of Gary D. Hailey at ¶ 5. On July, 1, 2009 at 4:13 p.m., Levitt sent Hailey a response email stating, "Gary-Any feedback? Joe". Hailey Aff. at Ex. C; Levitt

Decl. at Ex. 3. On July 1, 2009 at 4:21 p.m., Hailey replied stating, "I'm sure we'll make a decision by tomorrow at the latest. Regardless of what that decision is, we are moving forward with some additional changes to the advertising." Id.

On July 2, 2009 around 1:00 p.m., Hailey left a voicemail for Levitt indicating that Eco Canteen consented to proceed with the NAD review. Hailey Aff. at ¶ 14. Levitt states in his affidavit that he did not return Hailey's voicemail because he had turned the matter over to the litigation team. Levitt Decl. at ¶ 12. On July 9, 2009, Steven Hollman, a litigation attorney for IBWA, notified Eco Canteen that

> Accordingly, as you know, we have initiated a proceeding before the National Advertising Division ("NAD") of the Better Business Bureau challenging Eco Canteen's false and misleading statements. As we previously communicated to you, we regard the NAD proceeding as an efficient, cost-effective method for the parties to resolve this dispute, and we appreciate your client's stated willingness to participate. However, IBWA cannot permit Eco Canteen to use the pendency of the NAD proceeding as an excuse for continuing to run its deceptive advertisements. Consequently, IBWA will continue to participate in the NAD proceeding if, and only if, Eco Canteen agrees immediately to halt its advertising campaign featuring any of the false or misleading claims during the period of NAD's review. . . .If Eco Canteen's certifies by July 13 that it has halted the advertising campaign pending NAD review, then we will leave for NAD the determination as to whether Eco Canteen can provide adequate substantiation for its claims. If we do not receive Eco Canteen's certification by July 13, then we will have no choice but to conclude that Eco Canteen would prefer for IBWA to pursue appropriate judicial remedies, and we will so notify NAD.

Hailey Aff. at Ex. G.

On July 14, 2009, Hailey sent Hollman three e-mails regarding revisions to the Eco Canteen advertisements. Hailey Aff. at Ex. H, I and J. On July 17, 2009 at 5:18 p.m., Hailey sent Hollman an e-mail asking for feedback on the revised ads and stating "please also advise us as to the status of the NAD matter." Hailey Aff. at Ex. K. On July 21, 2009, Hollman replied to Haley's e-mail stating, "I received your message. I am in trial this week. Robert Wolinsky will be in touch with

7

you." Hailey Aff. Ex. L. That same day IBWA filed the current lawsuit.

Under North Carolina law, "an offer may specify in it the time within which acceptance must occur; if it does, the power of acceptance is limited accordingly." Southeast Coastal Devel. Fund, LLC v. Commercial Real Estate Inc., No. 5:08-CV-15-F, 2009 WL 928543, *7 (E.D.N.C. April 3, 2009) (quoting 1 Arthur Linton Corbin, Corbin on Contracts § 2.14 (Rev. Ed. 2008)); see also Normile v. Miller, 313 N.C. 98, 102-104, 326 S.E.2d 11, 14-15 (1985). "If an offer prescribes the place, time or manner of acceptance its terms in this respect must be complied with in order to create a contract." Restatement (Second) of Contracts § 60 (1981).

> The offeror's limitation of the time is not operative if it is not communicated so that the offeree knows or should know of it, but if so communicated, it operates with certainty. It makes no difference that the time specified is much less than a reasonable time. The offeror is the creator of the power, and the power dies, just as it was born, by the expression of the creator's will.

1 Arthur Linton Corbin, Corbin on Contracts § 2.14 (Rev. Ed. 2008). "If a definite time is fixed for acceptance, the offeree knows when a purported acceptance is later than the time specified and whether the power of acceptance has expired. In such a case, there seems to be no reason to give a belated attempt any effect other than that of a counter-offer." 1 Arthur Linton Corbin, Corbin on Contracts § 3.20 (Rev. Ed. 2008).

Applying these legal principles to the case at hand, the Court concludes that Eco Canteen did not accept the terms of IBWA's offer within the time fixed for acceptance. Based on the e-mails and communications between Hailey and Levitt, it is clear that IBWA's offer to continue the NAD proceeding was a time-limited offer that expired on July 1, 2009. When Eco Canteen attempted to accept the offer on July 2, 2009, this became a counteroffer by Eco Canteen to reopen the NAD proceeding because IBWA's offer had expired on July 1, 2009 and could not be accepted. IBWA

countered Eco Canteen's counteroffer on July 9, 2009 by offering to reopen the NAD proceedings if, and only if, Eco Canteen ceased making false and misleading statements during the pendency of the NAD review. Eco Canteen did not cease its advertising and thus, did not accept the terms of IBWA's counteroffer. Consequently, the Court finds that the parties never had a meeting of the minds with regard to resolving their dispute through the NAD review. Therefore, IBWA and Eco Canteen have not entered into a valid and enforceable agreement to arbitrate the parties' dispute before the NAD and the Court cannot require IBWA to submit to arbitration. Accordingly, the undersigned respectfully recommends that Eco Canteen's Motion to Dismiss be **DENIED**.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendant Eco Canteen Inc.'s Motion to Dismiss or Alternatively to Stay and Remand to Arbitration" (document #18) be **DENIED**.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)©, written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109

F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO ORDERED.**

Signed: October 20, 2009

David S. Cayer
United States Magistrate Judge