| | |
|---|---|
| INTERNATIONAL BOTTLED WATER ASSOCIATION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) **ORDER**<br>) |
| ECO CANTEEN, INC., | )<br>) |
| Defendant. | )<br>) |

**THIS MATTER** is before the Court on the plaintiff's Motion for Preliminary Injunction (Doc. No. 12) and Motion for Entry of Default and Default Judgment (Doc. No. 68). For the reasons stated below, the Court will **GRANT** the plaintiff's motion for default judgment and **DENY** the plaintiff's motion for preliminary injunction as moot.

**I. BACKGROUND**

The plaintiff, International Bottled Water Association ("IBWA"), is a non-profit corporation whose members are bottled water producers, distributors, and suppliers in the United States and abroad. IBWA is comprised of, among others, two types of members: those who produce and distribute "single use" water bottles, which typically contain the chemical polyethylene terephthalate ("PET"), and those who produce and distribute reusable polycarbonate water bottles, including reusable "water cooler" bottles, some of which contain the chemical Bisphenol-A ("BPA"). According to its complaint, IBWA's mission is "to serve as the authoritative source of information about bottled water, which is accomplished through consumer awareness, government relations, [and] technical expertise." (Doc. No. 1 at 2 ¶ 3). IBWA has also developed a Code of Practice,

mandatory for its members, designed to "establish[ ] high standards and procedures to help ensure the quality and safety of bottled water throughout all stages of production . . . ." (Id. at 11 ¶ 26).

The defendant, Eco Canteen, Inc. ("Eco Canteen"), sells reusable stainless steel water bottles, which contain neither PET nor BPA. In December of 2008, Eco Canteen began marketing its bottles through direct-response commercials appearing on television and the internet. In its various advertisements, Eco Canteen claims that there are specific health risks associated with drinking water from bottles containing both PET and BPA. Additionally, Eco Canteen's advertising underscores the cost and environmental impact of plastic water bottles.

In May of 2009, IBWA contacted Eco Canteen and requested that it immediately cease and desist from making claims of health risks associated with plastic water bottles. In June of 2009, seeing no significant changes to Eco Canteen's commercials, IBWA filed a complaint with the National Advertising Division of the Council of Better Business Bureaus ("NAD") regarding the purportedly false and misleading nature of Eco Canteen's advertising claims. The NAD rules and procedures forbid a party from publicizing a challenge or attempting to use the outcome of a NAD challenge for competitive advantage. Both parties were informed by the NAD that because IBWA had issued a press release contrary to the NAD rules, the NAD proceeding would be closed unless the parties expressly consented to continuing with the NAD's review of Eco Canteen's advertising materials. After Eco Canteen declined to consent to the NAD proceeding, IBWA filed a verified complaint with this Court on July 21, 2009. (Doc. No. 1).

In its complaint, IBWA asserts two claims against Eco Canteen: (1) false advertising under the Lanham Act, 15 U.S.C. § 1125(a); and (2) unfair and deceptive trade practices under § 75-1.1 of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"). IBWA then filed a motion for a preliminary injunction, asking the Court to prohibit Eco Canteen from making "any

false and misleading statements about the health and safety properties of plastic bottled water products[.]" (Doc. No. 12-2 at 2). IBWA also moved for the Court to enjoin Eco Canteen from "engaging in other acts or practices which tend to unfairly or deceptively to [sic] compete with or injure the business reputation and goodwill of IBWA." (Id.). The Court held a preliminary injunction hearing on March 15, 2010, and ordered additional briefing related to the issue of IBWA's standing, which the parties filed shortly thereafter. (Doc. Nos. 57 & 58).

While IBWA's motion for preliminary injunction remained pending, counsel for Eco Canteen moved to withdraw their representation on July 26, 2010, advising that Eco Canteen had ceased paying its legal fees or communicating with counsel. (Doc. Nos. 62 & 64). The referral magistrate judge promptly granted counsel's motions to withdraw and ordered Eco Canteen to secure replacement counsel within two weeks. (Doc. No. 65 at 2). Eco Canteen was expressly warned that a failure to do so could result in its default, and former counsel were instructed to send a copy of the magistrate's order permitting their withdrawal to Eco Canteen either by facsimile or electronic mail. (Id.).

After no replacement counsel filed an appearance with the Court, IBWA filed a motion for entry of default and default judgment against Eco Canteen on August 13, 2010. (Doc. No. 68). On September 15, 2010, at the Court's direction, the Clerk entered Eco Canteen's default pursuant to Fed. R. Civ. P. 55(a). (Doc. No. 70). At no point has Eco Canteen petitioned the Court for an extension of time in which to secure substitute counsel or otherwise made known its intention to continue defending against this lawsuit.

## II. LEGAL STANDARD

"In order to obtain a default judgment, a party must first seek an entry of default under Federal Rule of Civil Procedure 55(a)." Cameron v. MTD Prods., Inc., No. 5:03cv75, 2004 WL

3

3256003, at *2 (N.D. W. Va. Jan. 7, 2004); accord Eagle Fire, Inc. v. Eagle Integrated Controls, Inc., No. 3:06cv264, 2006 WL 1720681, at *5 (E.D. Va. June 20, 2006) ("The entry of default is a procedural prerequisite to the entry of a default judgment."). Rule 55(a) states that the clerk must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After the clerk enters default, the party may seek a default judgment under Rule 55(b)(1) or (2), depending on the nature of the relief sought. Rule 55(b) "authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982).

## III. DISCUSSION

### A. Standing

Prior to the withdrawal of its counsel, Eco Canteen challenged IBWA's standing to bring this lawsuit. Moreover, jurisdictional standing is an issue that may be considered sua sponte by the Court. Dan River, Inc. v. Unitex Ltd., 624 F.2d 1216, 1223 (4th Cir. 1980). An inquiry into standing is particularly necessary in light of IBWA's motion for default judgment, where it seeks both permanent injunctive relief and the recovery of damages. As plaintiff, IBWA bears the burden of demonstrating its standing to seek either remedy. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) ("Lujan II"); White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005).

"Standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirements . . . and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004). Article III standing requires a plaintiff to show: (1) injury-in-fact; (2) a causal connection or traceability; and (3) redressability. Lujan II, 504 U.S. at 560-61. The

4

injury-in-fact criteria contemplates that the alleged injury-in-fact is both "concrete and particularized and actual or imminent." Id. at 560. The term "particularized" means that "the injury must affect the plaintiff in a personal and individual way." Id. at 560 n.1. In addition, "there must be a causal connection between the injury and the conduct complained of . . . ." Id. at 560. Stated differently, the injury must be "fairly traceable" to action by the defendant. Id. Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 561 (internal quotation marks omitted).

"[P]rudential standing encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" Elk Grove, 542 U.S. at 12 (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)) (citations omitted). As the Supreme Court has instructed, "Without such limitations—closely related to Art. III concerns but essentially matters of judicial self-governance—the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." Id. (quoting Warth v. Seldin, 422 U.S. 490, 500 (1975)). Unlike Article III limits on standing, Congress may override by statute the prudential standing limitations. See, e.g., Bennett v. Spear, 520 U.S. 154, 167 (1997) ("[U]nlike their constitutional counterparts, [prudential limits] can be modified or abrogated by Congress . . . .").

IBWA asserts that it has "organizational standing," the right to sue on its own behalf, as well as "associational standing," the right to sue on behalf of its individual members. The Court addresses each contention in turn.

### 1. Organizational Standing

IBWA first argues that it has standing to seek injunctive relief and recover money damages on its own behalf because Eco Canteen's advertising statements have harmed IBWA's goodwill and reputation with the public. "An organizational plaintiff may establish standing to bring suit on its own behalf when it seeks redress for an injury suffered by the organization itself." White Tail Park, 413 F.3d at 458 (citing Warth, 422 U.S. at 511). The Court's inquiry into organizational standing is "the same inquiry as in the case of an individual," requiring a determination of whether the organization has "such a personal stake in the outcome of the matter to warrant [its] invocation of federal court jurisdiction." Md. Highways Contractors Ass'n, Inc. v. Maryland, 933 F.2d 1246, 1250 (4th Cir. 1991).

Here, IBWA lacks organizational standing to seek an injunction because it has not alleged an injury suffered by the organization itself. IBWA asserts its standing on the premise that because Eco Canteen's advertisements disparage plastic water bottles, they are likely to cause economic injury by disparaging IBWA's reputation and goodwill. This theory might hold water if IBWA's goodwill and reputation depended on the general public's opinion. See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 552 (4th Cir. 1994) (recognizing loss of goodwill as an injury that may warrant injunctive relief). IBWA, however, is an association of bottled water producers, distributors and suppliers that does not promote bottled water products through its own advertising. Instead, IBWA promotes bottled water through government lobbying and enforcing its Code of Practice among IBWA members. There is no indication that the general public is even aware that IBWA exists. See Camel Hair and Cashmere Inst. of Am., Inc. v. Assoc. Dry Goods Corp., 799 F.2d 6, 12 (1st Cir. 1986) (false advertising directed at the general public will not warrant a preliminary injunction when "there is no indication that the general public even knows

of the plaintiff's existence"). To demonstrate an actual economic injury, IBWA must allege a loss in revenue or a decline in membership resulting from Eco Canteen's advertisements. See Maryland Highways, 933 F.2d at 1250. Neither is alleged to have occurred in this case.

Nor is IBWA's stated interest in promoting the quality and safety of bottled water a valid ground to assert organizational standing. "[A]n organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III." Simon v. E. Kentucky Welfare Rights Org., 426 U.S. 26, 40 (1976); see also Sierra Club v. Morton, 405 U.S. 727, 739 (1972) (an organization's "special interest" in the subject of a controversy does not establish its standing). Although Eco Canteen's advertisements may deliver a message contrary to IBWA's "organizational purpose," this is not a cognizable injury suffered by the organization. Maryland Highways, 933 F.2d at 1250-51. Thus, IBWA lacks standing to sue on its own behalf.

### 2. Associational Standing

IBWA also claims associational standing on behalf of its members, asserting that Eco Canteen's advertisements are likely to confuse consumers and divert sales from plastic water bottles, thereby causing injury to IBWA members. An organization has associational standing to bring suit on behalf of its members if: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977); Retail Indus. Leaders Ass'n v. Fielder, 475 F.3d 180, 186 (4th Cir. 2007).

IBWA has not named any of its members in its pleadings or attached any affidavits from members showing specifically how they have been or are likely to be harmed by Eco Canteen's advertisements. However, according to the complaint, IBWA's members include bottled water

7

producers, distributors, and suppliers. Its member companies "rang[e] in size from small family-owned water bottlers to large diversified food corporations producing bottled water, both within the United States and around the world." (Doc. No. 1 at 11 ¶ 24). IBWA alleges that Eco Canteen's advertisements regarding the health and safety of water bottles have caused injury to the goodwill and reputation of IBWA's members. IBWA further alleges that Eco Canteen's advertising statements "are likely to have an adverse effect on IBWA members by diverting sales away from those members and other bottled water producers," and that its members will continue to suffer direct injury unless injunctive relief is granted. (Doc. No. 1 at 14 ¶ 37). Assuming their truth, these allegations of injury meet the constitutional requirements for individual standing of IBWA's members.

Moreover, IBWA's individual members would have standing under the Lanham Act. "[T]he Lanham Act is 'a private remedy [for a] commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competitor's false advertising.'" Made in the USA Found. v. Phillips Foods, Inc., 365 F.3d 278, 281 (4th Cir. 2004) (quoting Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1139 (4th Cir. 1993)); accord Scheduled Airlines Traffic Offices v. Objective, Inc., 180 F.3d 583, 591 n.5 (4th Cir. 1999) (quoting Smith v. Montoro, 648 F.2d 602, 608 (9th Cir. 1981) (applying the Ninth Circuit's test for standing under the Lanham Act, which requires plaintiff to have a "reasonable interest to be protected against false advertising"). Even if the Lanham Act requires direct competition between plaintiff and defendant for purposes of prudential standing, see Foster v. Wintergreen Real Estate Co., 363 F. App'x 269, 275 (4th Cir. Jan. 29, 2010) (unpublished) (noting uncertainty in whether direct competition is required), Eco Canteen's product is meant to replace, and thus competes with, plastic water bottles. Upon the facts alleged in IBWA's complaint, its members have standing to sue under the Lanham Act in their own right.

8

The second prong of the Hunt test requires an organization to show that the interests it seeks to protect are germane to the organization's purpose. 432 U.S. at 343. An interests is "germane" to an organization's purpose if it furthers the stated purposes upon which an organization operates. See, e.g., ACLU v. Ashbrook, 375 F.3d 484, 490 (6th Cir. 2004); Minn. Fed'n of Teachers v. Randall, 891 F.2d 1354, 1359 (8th Cir. 1989). Here, the injunctive relief sought by IBWA would protect the reputations of its members. This interest is germane to the organization's stated purpose of "promoting the quality of its member companies' products that meet [high standards of quality and safety for bottled water products]." (Doc. No. 1at 11 ¶ 24). Accordingly, IBWA meets the second prong of the Hunt test.

The third and final prong of the Hunt test requires that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." 432 U.S. at 343. Whether this final prong is met often depends upon the type of relief sought by the organization. Typically, when an organization seeks a "declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." Warth, 422 U.S. at 515. The injunctions IBWA seeks certainly fall within this category of equitable relief. Moreover, the Court finds no indication of "conflicts of interest among members of the association" requiring that IBWA's members "join the suit individually in order to protect their own interests." Md. Highways, 933 F.2d at 1252 (citing Assoc. Gen. Contractors v. Otter Tail Power Co., 611 F.2d 684, 691 (8th Cir. 1979)). Although it can be said that members who sell disposable PET bottles compete at some level with members who sell reusable BPA bottles, IBWA brings this lawsuit under the stated purpose of protecting the interests of both groups of association members. Moreover, the injunctive relief that it seeks would benefit both classes of members. See Retail Indus. Leaders, 475 F.3d at 188 (an association of

competitors has standing to pursue litigation "uniformly endorsed" by its members). IBWA has therefore adequately demonstrated its associational standing to seek injunctive relief against Eco Canteen's advertisements.

IBWA lacks associational standing, however, to assert claims for money damages on behalf of its members, because these claims would require "examination of each member's unique injury[.]" Id. at 187. The same is true for IBWA's claim under § 1117(a) of the Lanham Act for disgorgement of Eco Canteen's profits. Although disgorgement of profits is an equitable remedy, it would also require an examination of each IBWA member's unique injury in order to equitably apportion any profits awarded under § 1117(a). To the extent that IBWA's claims seek money damages or disgorgement of profits, they will be dismissed in part by the Court sua sponte for lack of standing.

### B. Default Judgment

"It has been the law for the better part of two centuries . . . that a corporation may appear in federal courts only through licensed counsel." Rowland v. California Men's Colony, 506 U.S. 194, 201-02 (1993). The withdrawal of its counsel has thus rendered Eco Canteen unable to defend itself in federal court. When granting counsel's motion to withdraw on July 26, 2010, the magistrate judge assigned to this case ordered Eco Canteen to retain substitute counsel within two weeks. (Doc. No. 65 at 2). The magistrate further warned Eco Canteen that its failure to do so could result in the entry of default judgment against it. See Allied Colloids, Inc. v. Jadair, Inc., 139 F.3d 887 (table), 1998 WL 112719 (4th Cir. Mar. 16, 1998) (unpublished) (affirming default judgment as the appropriate consequence to a corporate defendant's failure to secure licensed counsel). This deadline has now passed, and Eco Canteen has failed to secure replacement counsel or petition the Court for an extension of time in which to do so. Moreover, IBWA served Eco Canteen with a copy of its motion

for default judgment at its last known addresses over one month ago, and no response has been made. See Fed. R. Civ. P. 55(b)(2) (directing a party to serve written notice of its application for default judgment on a party opponent who has made an appearance in the matter). It therefore appears with certainty that Eco Canteen is either unwilling or unable to defend itself in this lawsuit. As a result, the Court is left with no choice but to award default judgment to IBWA.

**C. Injunctive Relief, Costs and Attorney's Fees**

Upon entry of default judgment, a court must accept a plaintiff's well-pleaded fact allegations as true. DIRECTV, Inc. v. Rawlins, 523 F.3d 318, 322 n.2 (4th Cir. 2008) (citing Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir.2001)). A prevailing plaintiff must still, however, prove its entitlement to the damages it seeks. Masco Corp. v. Bennett, No. 3:08cv161, 2010 WL 1405136, at *2 (W.D.N.C. Mar. 31, 2010). Although IBWA's remaining claims are for equitable remedies rather than money damages, this rule should nevertheless require that IBWA demonstrate its entitlement to the relief sought in its complaint. See Post Tribune Pub., Inc. v. American Arbitration Assoc., Inc., 767 F. Supp. 935, 942 (N.D. Ind. 1991).

The proposed order submitted by IBWA in connection with its motion for entry of default and default judgment would permanently enjoin Eco Canteen from disseminating false or misleading advertisements. It would further order Eco Canteen to halt any existing false or misleading advertising until it removes the offending content.[1] Accepting the truth of IBWA's fact allegations, such relief is warranted under the circumstances and consistent with principles of equity. Accordingly, an order permanently enjoining Eco Canteen from engaging in such activity will be entered by the Court.

---

[1] The Court construes IBWA's proposed order as waiving the additional measures of injunctive relief sought in its complaint.

11

Finally, IBWA's complaint also seeks an award of costs and attorney's fees under both § 1117(a) of the Lanham Act and N.C. Gen. Stat. § 75-16.1. Section 1117(a) of the Lanham Act entitles a plaintiff to recover the "costs of the action" as a matter of course upon establishing a violation under § 1125(a). Accepting IBWA's allegations as true, a violation of § 1125(a) has been established, and IBWA may therefore recover from Eco Canteen the costs associated with bringing this action. The recovery of reasonable attorney's fees, however, are authorized under the Lanham Act in "exceptional cases" only. 15 U.S.C. § 1117(a). The Court has examined the entire record in this case and concludes that there are no exceptional circumstances present to warrant recovery of attorney's fees by the prevailing party. N.C. Gen. Stat. § 75-16.1 also grants the Court discretion to award attorney's fees, and the Court declines to do so in this case for the same reasons stated above.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. IBWA's claims are **DISMISSED IN PART** to the extent they seek money damages or a disgorgement of Eco Canteen's profits, and IBWA's request for a hearing on the issue of damages is **DENIED**;

2. IBWA's motion for default and default judgment (Doc. No. 68) is **GRANTED**, and the Court hereby renders judgment against the defendant Eco Canteen;

3. Eco Canteen, all of its agents, servants, employees, representatives, successors and assigns, and all other persons in active concert or participation with them who receive actual notice of this Order, **BE**, and they hereby **ARE, PERMANENTLY ENJOINED**, pending further order of this Court:

   a. From disseminating any commercial advertisements in any form, including websites published on the internet, that make any false and misleading statements about the health and safety properties of plastic bottled water products, including but not limited to the following assertions, both explicitly or implicitly:

      i. That plastic bottled water containers are threatening or dangerous to public health;

      ii.      That PET and polycarbonate plastic bottles can "poison" consumers and/or cause cancer, diabetes or other ailments;

      iii.     That PET and polycarbonate plastic bottles leach "dangerous chemicals" into water;

      iv.     That PET and polycarbonate plastic bottles leach "poisons" or "toxins" or other deleterious substances into water when placed in a warm environment or at room temperature;

      v.      That plastic bottled water containers contain "phthalates" and/or that plastic bottled water containers leach "phthalates" into water;

      vi.     That PET single-serve bottled water containers contain BPA;

      vii.     That BPA is dangerous or threatening to public health;

      viii.    That the act of recycling releases "poisons" or "toxins" or other deleterious substances contained in plastic bottled water products; and

  b.    From engaging in other acts or practices which tend to unfairly or deceptively to compete with or injure the business reputation and goodwill of IBWA;

4.    Eco Canteen, its agents, servants, employees, representatives, successors and assigns, and all others in active concert or participation with them, shall immediately **HALT** all print, internet, television and any other media advertisement campaigns or commercial communications containing any false and/or misleading statements regarding the health and safety properties of plastic bottled water products;

5.    Eco Canteen, its agents, servants, employees, representatives, successors and assigns, and all others in active concert or participation with them, shall **REMOVE** all false and/or misleading statements regarding the health and safety properties of plastic bottled water products contained in any of its print, internet, television and any other media advertisement campaigns or commercial communications;

6.    IBWA is entitled to recover from Eco Canteen the costs of bringing this action, excepting attorney's fees; and

7.    IBWA's motion for preliminary injunction (Doc. No. 12) is **DENIED** as moot.

13

**SO ORDERED**.

Signed: September 17, 2010

Robert J. Conrad, Jr.
Chief United States District Judge